**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. GEORGE POLSON,<br><br>        Plaintiff,<br><br>v.<br><br>VIVIMED LABS INC. USA and VIVIMED LABS LIMITED,<br><br>        Defendants. | Civil Action No. 20-00914 (ZNQ) (TJB)<br><br>**MEMORANDUM OPINION** |

**QURAISHI, District Judge:**

This matter comes before the Court upon Cross-Motions for Summary Judgment filed by Plaintiff Dr. George Polson ("Plaintiff") and Defendants Vivimed Labs Inc., USA and Vivimed Labs Limited (collectively, "Defendants" or "Vivimed"). (ECF Nos. 15 and 16). Specifically, Plaintiff moves for partial summary judgment on Counts I through IV, while Defendants move for partial summary judgment on Counts I, II, IV, V, and VI of the Complaint. The parties opposed the respective motions (ECF Nos. 19 and 20), and filed replies (ECF Nos. 22 and 23.) The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons set forth herein, Plaintiff's motion for partial summary judgment and Defendants' motion for partial summary judgment are **GRANTED** in part and **DENIED** in part. Plaintiff's motion is granted as to Counts I and III, and Defendants' motion is granted as to Counts II, IV, V, and VI.

### I. BACKGROUND

Defendants are a collection of global chemical and pharmaceutical companies with a parent company headquartered in Hyderabad, India. (Pl.'s Statement of Undisputed Material Facts

("PSUMF") ¶ 1, ECF No. 15-1). Plaintiff was employed as the Chief Operating Officer ("COO") of Vivimed Labs Inc. USA, and his employment was governed by an employment agreement signed by Plaintiff on April 8, 2013 (the "Employment Agreement"). (*Id.* ¶ 1; (Defs'. Statement of Undisputed Material Facts ("DSUMF") ¶¶ 1-2, ECF No. 16-1). It is undisputed that the Employment Agreement provided for a four-year term of employment from April 22, 2013 to March 2017. (DSUMF ¶ 15). Despite his title as COO of Vivimed Labs Inc. USA, it is also undisputed that Plaintiff "was a global COO for specialty chemicals" throughout the Vivimed organization. (PSUMF ¶ 3).

In part, the Employment Agreement set forth Plaintiff's compensation, including annual bonuses, additional stock grants or cash in lieu of a 401(k) plan, increases to base salary, and other forms of payment. Specifically, during the term of employment, Defendants agreed to pay Plaintiff $200,000 annually to be "incremented yearly as per [Vivimed] policy." (Affirmation of Andrew J. Dressel, Esq. in Support of Plaintiff's Motion for Summary Judgment ("Dressel Aff."), Ex. 2 ("Employment Agreement") at Annexure I, ECF No. 15-4). The Employment Agreement also provided that Plaintiff would be paid the equivalent of $15,000 per year in lieu of a 401(k) plan. (*Id.*) With respect to Plaintiff's entitlement to an annual bonus, the Term Sheet appended to the Employment Agreement further provided:

> Bonus of US 400,000 for four years paid out as $100,000 per year. This can include Cash as well as guaranteed paid stocks.

(*Id.*)

Finally, in addition to salary, bonuses, and other compensation, the Employment Agreement provided a "performance incentive package" related to any potential sale or divestiture of Defendants' Special Chemicals Division. Section 14.6 of the Employment Agreement stated:

2

> In the event of termination of this Agreement due to the acquisition of the Special Chemicals division of the Company, then the Employee shall also receive 5% of the difference in the value of the division between its value on the date hereof (determined by the [auditor of the Company]) and the value received in the said sale.

(Dressel Aff., Ex. 2 at § 14.6). In September 2015, Defendants sold a portion of the Specialty Chemical Division to a subsidiary of Clariant India Limited ("Clariant") for approximately $58 million. (PSUMF ¶ 16; Defs'. Response to Pl.'s Statement of Undisputed Material Facts ("DRSUMF") ¶ 16, ECF No. 19-1.).

In March 2017, Plaintiff's employment ended at the expiration of the Employment Agreement's four-year term. (DSUMF ¶17). Plaintiff claims, however, that although he was paid his base salary of $200,000 annually over the course of those four years, Defendants never paid any of the annual bonuses, raises, or other monetary incentives that he was entitled under the Employment Agreement. (*See generally* ECF No. 1 ("Compl.")). Defendants do not dispute their failure to pay Plaintiff in this regard. Rather, they assert that pursuant to the contractual language of the Employment Agreement, Plaintiff was not entitled to such compensation based on his failure to meet certain job performance objectives and other factors. (ECF No. 16-2 ("Defs.' Moving Br."), 12-17). According to Plaintiff, he repeatedly questioned Defendants about their failure to pay this compensation, but those inquiries went unanswered. (PSUMF ¶ 22).

On January 28, 2020, Plaintiff commenced this action asserting six claims against Defendants: (1) breach of contract (Counts I-IV), (2) promissory estoppel (Count V), and unjust enrichment (Count VI). (*See generally* Compl.).

On May 28, 2021, Plaintiff filed the instant motion for partial summary judgment as to his breach of contract claims (Counts I-IV). (ECF No. 15). That same day, Defendants cross-moved for partial summary judgment as to Counts I, II, IV, V, and VI. (ECF No. 16).

## II.     LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,] . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's

4

case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

### III.   DISCUSSION

As set forth above, the parties have filed cross-motions for partial summary judgment. While Plaintiff moves for summary judgment on his breach of contract claims in Counts I through IV, Defendants seek summary judgment on Counts I, II, IV, V, and VI. The Court will address these claims, in turn.

####   A.   Breach of Contract Claims (Counts I-IV)

Counts I through IV assert claims for breach of contract based on Defendants' purported failure to pay Plaintiff (1) annual bonuses, (2) incremental salary increases, (3) additional stock grants or cash in lieu of a 401(k) plan, and (4) special compensation following the sale of a portion of the Specialty Chemicals Division. (*See generally* Compl.). To succeed on a breach of contract claim under New Jersey law, a plaintiff must prove that (1) the parties entered into a contract; (2) breach of the contract; (3) damages as a result of the breach; and (4) that the complaining party performed its own duties under the contract. *Pollack v. Quick Quality Rests., Inc.*, 452 N.J. Super. 174, 188 (App. Div. 2017) (citing *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016)).

The party bringing the suit has the burden of establishing the breach. *Nolan v. Control Data Corp.*, 243 N.J. Super. 420, 438 (App. Div. 1990). Contracts should be construed according to the plain and ordinary meaning of their terms. *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 364 (3d Cir. 2004). "Clear contractual terms that are capable of one reasonable interpretation must be given effect without reference to matters outside the contract." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp.*, 247 F.3d 79, 93 (3d Cir. 2001) (internal quotation omitted). If contractual language is "subject to only one reasonable interpretation," summary judgment may be appropriate. *Arnold M. Diamond, Inc. v. Gulf Coast Trailing, Co.*, 180 F.3d 518, 521 (3d Cir. 1999). Conversely, a contract is ambiguous if it is "susceptible of more than one meaning." *Sumitomo Mach. Corp. of Am., Inc. v. Allied Signal, Inc.*, 81 F.3d 328, 332 (3d Cir. 1996) (quotation omitted). "If the meaning of a contract is ambiguous, summary judgment is generally not appropriate." *Soranno v. Heartland Payment Sys., LLC*, No. 18-16218, 2020 WL 5652469, at *6 (D.N.J. Sept. 23, 2020).

   1. Count I

In Count I, Plaintiff asserts a claim for breach of contract based on Defendants' purported failure to pay him annual bonuses totaling $400,000 over the course of four years. (Compl. ¶¶ 34-36). According to Plaintiff, summary judgment is warranted because no basis exists in the Employment Agreement for withholding the $100,000 "guaranteed" annual bonus payments. (ECF No. 15-10 ("Pl.'s Moving Br."), 8). Defendants, on the other hand, argue that summary judgment is appropriate in their favor because the Employment Agreement did not "guarantee" an annual bonus payment as claimed by Plaintiff. (Defs'. Moving Br. 5-6). Instead, Defendants contend that discussions between the parties during negotiations of the Employment Agreement clearly established that Plaintiff's entitlement to an annual bonus was contingent on him meeting

certain performance-based targets. (*Id.* at 6-7). According to Defendants, because Plaintiff never met those performance targets, Count I should be dismissed. (*Id.* at 7-8).

Here, because the Employment Agreement clearly and unambiguously provided that Plaintiff was to receive $100,000 annually—without any reference to performance-based requirements or contingencies—the Court finds summary judgment appropriate in favor of Plaintiff. Specifically, the Employment Agreement provided simply that Plaintiff was to receive an annual bonus of "USD 400,000 for four years paid out as $100,000 per year. This can include Cash as well as guaranteed paid stocks." (Employment Agreement at Annexure I). In that regard, the Court notes that the Employment Agreement makes no mention of Plaintiff's bonus being tied to work performance or Plaintiff's ability to meet certain performance-based targets, and the Court declines to read limitations into the parties' bargained-for agreement that do not exist. *Avatar Bus. Connection, Inc. v. Uni-Marts, Inc.*, No. 04-1866, 2005 WL 3588482, at *12 (D.N.J. Dec. 29, 2005) (finding that courts cannot insert terms into a contract that are "conspicuously absent" because under New Jersey law, a court's obligation is to enforce the contract as written); *see also E. Brunswick Sewerage Auth. v. E. Mill Assocs., Inc.*, 365 N.J. Super. 120, 125 (App. Div. 2004) ("A court has no power to rewrite the contract of the parties by substituting a new or different provision from what is clearly expressed in the instrument.").

Moreover, to the extent that Defendants contend the Court should consider extrinsic evidence related to the parties' negotiations because the word "bonus" is ambiguous, the Court is unpersuaded. Contracts should be construed according to the plain and ordinary meaning of their terms. *See, e.g., Bergholm v. Peoria Life Ins. Co.*, 284 U.S. 489, 492 (1932*); Imperial Life Ins. Co. v. Coos County*, 151 U.S. 452, 463 (1894); *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 364 (3d Cir. 2004). New Jersey state courts cite the dictionary definition of "bonus" as "something

7

given or paid in addition to the … usual or expected." *In re Estate of Gregoriou*, 142 N.J. Super. 465, 468 (Co. Prob. Div. 1976), *rev'd on other grounds*, 153 N.J. Super. 44, 378 A.2d 1168 (App. Div. 1977). Similarly, Webster's Third New International Dictionary defines a "bonus" as "something given or received that is over and above what is expected." *See Resolution Tr. Corp. v. Fid. & Deposit Co. of Maryland*, 205 F.3d 615, 649 (3d Cir. 2000). Neither definition suggests that bonuses may only be given as a reward for exemplary performance. Rather, as the definitions indicate, in this context, Plaintiff's bonus was simply compensation paid "in addition to" his annual salary. Put simply, had Defendants intended for Plaintiff's bonus to depend on his work performance, they should have referenced those limitations in the contractual language. They did not, and therefore, summary judgment is granted in favor of Plaintiff as to Count I.

    2. *Count II*

Count II asserts a breach of contract claim against Defendants for failure to pay Plaintiff incremental increases in his salary. (Compl. ¶¶ 38-43). According to Plaintiff, the Employment Agreement set forth a "guaranteed annual salary in an amount of $200,000, as well as a yearly incremental raise of four percent (4%) in accordance with [Vivimed] policy." (*Id.* ¶ 39). Plaintiff claims that over the course of four years, he was entitled to approximately $33,971.71 in incremental salary raises that were unfairly withheld by Defendants. (*Id.* ¶ 40). Defendants, however, disagree. Similar to their position as to payment of an annual bonus, they argue that dismissal of this claim is warranted because the express language of the Employment Agreement demonstrates that any salary increases were not guaranteed. (Defs'. Moving Br. 16-17). Rather, Defendants maintain that like the annual bonuses, these yearly incremental raises were dependent on Plaintiff's performance. (*Id.*)

Here, contrary to Plaintiff's tortured reading, the Employment Agreement provided only that Defendants would pay Plaintiff $200,000 per year "incremented yearly <u>as per [Vivimed] policy</u>." (Employment Agreement at Annexure I) (emphasis added). Thus, the clear contractual language demonstrates that any potential incremental increase in Plaintiff's salary was not "guaranteed," as Plaintiff claims. Indeed, the word "guaranteed"—or any such synonym—is not found anywhere in the Employment Agreement or the Term Sheet as it relates to salary increases, nor does the Employment Agreement provide for a 4% yearly raise. Similar to Plaintiff's entitlement to an annual bonus, the Court declines to read such terms into the parties' agreement that do not exist. *Avatar Bus. Connection, Inc.*, No. 04-1866, 2005 WL 3588482, at *12.

That said, it is equally clear from the unambiguous language of the Employment Agreement that Plaintiff <u>may</u> have been entitled to incremental raises in his salary. In that regard, it is undisputed that as set forth above, Defendants agreed to pay Plaintiff $200,000 per year "incremented yearly <u>as per [Vivimed] policy</u>." (Employment Agreement at Annexure I) (emphasis added). Neither party, however, has provided any formal internal Vivimed policy governing employee salary increases, and according to Defendants, no written policy exists related to awarding salary raises. (Declaration of Daniel S. Sweetser, Esq. in Support of Defendants' Motion for Summary Judgment ("Sweetser Decl."), Ex. J ("Varalwar Dep. Tr.") at 46:12 to 14). Indeed, while testimony by Defendants' Managing Director, Santosh Varalwar, suggests that some—albeit oral or informal—policy may exist because Defendants had previously awarded salary raises to other employees, he further testified that such raises were based on merit and work performance. (Declaration of Daniel S. Sweetser, Esq. in Support of Defendants' Motion for Summary Judgment (Varalwar Dep. Tr. at 46:18 to 48:10). In that connection, Plaintiff has provided no evidence related to Defendants' salary increase policy, including the metrics or performance-based targets

9

considered in the decision-making process, who authorizes or approves eligible employees for salary increases, and, critically, whether Plaintiff satisfied the criteria required for a salary increase. Indeed, Plaintiff cites no evidence whatsoever related to his work performance. Therefore, the Court finds summary judgment is appropriate in favor of Defendants as to Count II. In short, based on the factual record developed by the parties in discovery, the Court lacks even a rudimentary understanding of what may be required for Plaintiff to be eligible for the salary increase that he seeks, nor does the Court possess any facts demonstrating Plaintiff's ability to satisfy those criteria. Accordingly, because a factfinder cannot assess whether Plaintiff was entitled to a salary increase, Count II is dismissed with prejudice.

    3. *Count III*

In Count III, Plaintiff asserts a breach of contract claim against Defendants alleging that the Employment Agreement entitled him to "guaranteed annual additional stock grants or cash" of $15,000 in lieu of a 401(k) plan. (Compl. ¶ 45). According to Plaintiff, Defendants wrongfully withheld these annual grants for four years, totaling $60,000 of unpaid funds. (*Id.* ¶¶ 45-46). In opposition to Plaintiff's motion for summary judgment, however, Defendants concede that Plaintiff is entitled to $15,000 per year in lieu of a 401(k) benefit. (Defs.' Opp.'n Br. 2). Indeed, Varalwar agreed that the Employment Agreement entitles Plaintiff to this benefit. (Varalwar Dep. Tr. at 44:3 to 18). Therefore, because the Court finds that it is undisputed that Plaintiff is entitled to $60,000 for the four years of unpaid stock grants or cash payments, summary judgment is granted in favor of Plaintiff as to Count III.

    4. *Count IV*

In Count IV, Plaintiff claims that Defendants breached the Employment Agreement by failing to pay him "special compensation." (Compl. ¶¶ 50-56). According to Plaintiff, the

Employment Agreement provided a "performance incentive payment" in the event the Specialty Chemical Division was "acquired or divested during the tenure of [the Agreement]." (*Id.* ¶ 50). Plaintiff claims that this form of "special compensation" was to be calculated as "5% of the net value of the differential valuation of the division from the date of employment to the date of being acquired." (*Id.*) Plaintiff further alleges that a significant part of the Specialty Chemical Division was divested in 2015 for $58 million. (*Id.* ¶ 51). According to Plaintiff, the divestiture represented a substantial increase in the value of the majority component of the Specialty Chemical Division, and therefore, under the terms of the Employment Agreement, Plaintiff is owed 5% of that increase in value. (*Id.* ¶¶ 52-54).

The Court disagrees with Plaintiff's position because he disregards the plain and unambiguous language of the Employment Agreement. *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013) (finding that summary judgment in a breach of contract action "is appropriate only where the contractual language is unambiguous—*i.e.*, subject to only one reasonable interpretation."). Section 14.6 of the Employment Agreement provided that:

> <u>In the event of termination of this Agreement due to the acquisition of the Special Chemicals division of the Company</u>, then the Employee shall also receive 5% of the difference in the value of the division between its value on the date hereof (determined by the [auditor of the Company]) and the value received in the said sale.

(Employment Agreement at § 14.6) (emphasis added). While it is undisputed that a portion of the Specialty Chemical Division was sold to Clariant for a sale price of approximately $58 million in September 2015, it is equally undisputed that Plaintiff's employment did not terminate because of the sale. Indeed, Plaintiff concedes that he continued to work for Defendants pursuant to the Employment Agreement for another eighteen months following the transaction. (PSUMF ¶ 4). To

be sure, Plaintiff was never terminated by Defendants at all. Rather, his employment concluded in March 2017, when the four-year term of the Employment Agreement expired.

Moreover, Plaintiff cites no evidence in the record to suggest a contrary reading or interpretation of the Employment Agreement. *See United States ex rel. River Front Recycling & Aggregate, LLC v. Kallidus Techs., Inc.*, No. 18-9141, 2019 WL 2082948, at *3 (D.N.J. May 13, 2019) (citation omitted) ("A contract is ambiguous if its terms are susceptible to two or more reasonable alternative interpretations."). Rather, Plaintiff simply relies on Annexure I of the Employment Agreement, which acts as the Term Sheet, to support his position that he was entitled to an incentive fee despite not being terminated. (Pl.'s Opp.'n Br. 14-15). In that connection, the Term Sheet provided:

> In the event of Specialty Chemical Division being acquired or divested during the tenure of this contract, [Plaintiff] will be eligible for special compensation which shall be computed as 5% of the net value of the differential valuation of the division from the date of employment to the date of being acquired.

(Employment Agreement at Annexure I). While the critical language regarding Plaintiff's termination is absent from the Term Sheet, the Court cannot overlook, however, that the Term Sheet is divided into categories and that this incentive payment exists under the category of "Termination of Employment." (*Id.*) Thus, the Court finds that the Term Sheet is consistent with Section 14.6 of the Employment Agreement, which requires that Plaintiff be terminated due to the acquisition of the Specialty Chemical Division as a condition precedent to the incentive fee. Because Plaintiff was not terminated as a result of the partial sale of the Specialty Chemical Division during his employment, Defendants' motion for summary judgment is granted as to Count IV. Count IV is dismissed with prejudice.

### B. Promissory Estoppel (Count V) and Unjust Enrichment (Count VI)

Finally, Defendants move to dismiss Plaintiff's claims for promissory estoppel (Count V) and unjust enrichment (Count VI). As to these quasi-contractual claims, however, Plaintiff acknowledges that they were only brought in the alternative in case Defendants argued that the Employment Agreement did not constitute a legally binding agreement. Because Defendants have not challenged the enforceability of the Employment Agreement, and therefore, agree that it governs the parties' employment relationship, Plaintiff has agreed to dismiss Counts V and VI. (Pl.'s Opp.'n Br. 17).

### IV. CONCLUSION

For the reasons set forth above, Plaintiff's motion for partial summary judgment and Defendants' motion for partial summary judgment are **GRANTED** in part and **DENIED** in part. Plaintiff's motion is granted as to Counts I and III, and Defendants' motion is granted as to Counts II, IV, V, and VI.


Dated: May 26, 2023

*s/ Zahid N. Quraishi*
Zahid N. Quraishi
United States District Judge